PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | CASE NO. 1:14cv2579 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| AMERICO FISCO REVOCABLE TRUST, | ) | |
| *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 11; 12] |

Pending before the Court are competing motions for summary judgment filed by Plaintiff

United States Postal Service (ECF No. 11) and Defendants Americo Fisco Revocable Trust and

Margaret P. Fisco (ECF No. 12).  The Court has been advised, having reviewed the record,

including the parties' briefs and the applicable law.  For the reasons that follow, the Court grants

Plaintiff's motion (ECF No. 11) and denies Defendants' motion (ECF No. 12).

**I.  Factual and Procedural Background**

The United States entered into a lease with American Guardian Financial on February 10,

1965 to use the property located at 4040 Erie Street, Willoughby, Ohio, 44094 as a post office.

ECF No. 11-2.  The lease's initial basic term ran from January 1, 1965 until December 31, 1984.

*Id.* at PageID #: 109.  In addition, the lease also provided for six five-year renewal options.  *Id.*

In total, the lease covered a maximum of fifty years during which the property was to be used as

a post office.

Additionally, the lease also included a purchase option.  The United States could purchase

(1:14cv2579)

fee simple title to the leased premises and the underlying land for $300,000 at the conclusion of

the initial basic lease term or at the conclusion of any of the exercised five-year renewal option

terms.  ECF No. 11-2 at PageID #: 112.  To exercise the purchase option, the United States was

required to give the Lessor notice of its election to purchase at least one year prior to the

expiration of the then-current term of the least.  *Id.*

On October 20, 1977, American Guardian Financial assigned all "right, title, and interest

in and to" the lease to Defendant Margaret P. Fisco.  ECF No. 11-8 at PageID #: 149.  Fisco,

represented by counsel (ECF No. 11-6 at PageID #: 139, p.16:25-17:8), "assume[d] and agree[d]

to perform and observe all obligations and covenants to be performed . . . pursuant to the Lease."

ECF No. 11-8 at PageID #: 149.  American Guardian Financial also conveyed the deed to the

post office to Fisco on that same day.  ECF No. 11-9.  Fisco purchased the lease and the deed for

$93,000, in addition to agreeing to assume the outstanding mortgage balance of $98,932.88.

ECF No. 11-10 at PageID #: 153.  On July 6, 1994, Fisco conveyed the title of the post office to

Margaret P. Fisco, Trustee of the Americo Fisco Revocable Trust for estate planning purposes.

ECF No. 11-12; ECF No. 11-11 at PageID #: 158.

Over the course of 50 years, the United States Postal Service (and its predecessor the Post

Office Department) complied with its payment obligations.  ECF No. 11-4 ¶ 9.  The Postal

Service also timely and properly exercised all six renewal options, the last of which expired

December 31, 2014.  *Id.* ¶ 8.  The Postal Service, through an authorized agent, notified Fisco on

December 27, 2013 of the Postal Service's intent to exercise the purchase option.  ECF No.

11-13.  Plaintiff's notice was timely under paragraph 16 of the lease.  ECF No. 11-2 at PageID #:

2

(1:14cv2579)

112.  Defendants responded by letter indicating that the $300,000 purchasing price was "unconscionable as a contract term."  ECF No. 11-15 at PageID #: 171.  The Postal Service reiterated that it was ready, willing, and able to complete the transaction (ECF No. 11-16), but Defendants maintained the position "that the purchase option price in the lease is unconsiderable."  ECF No. 11-17 at PageID #: 173.

Plaintiff initiated this action seeking declaratory judgment and specific performance of the sale of the 4040 Erie Street property at a purchase price of $300,000 within thirty days of judgment.  ECF No. 1.  Defendants answered and filed counterclaims claims for declaratory relief (seeking a declaration that the purchase option in the Lease is unenforceable), holdover rents, or, in the alternative, unconstitutional taking by the Government.  ECF No. 5.  Both parties have filed motions for summary judgment.  ECF Nos. 11; 12.  The matter is ripe for adjudication.

## II.  Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden

3

(1:14cv2579)

of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict.  *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

The summary judgment standard does not change simply because the parties present cross-motions. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  Cross-motions for summary judgment do not require the court to grant judgment as a matter of law for one side or the other.  "Summary judgment in favor of either party is not proper if

4

(1:14cv2579)

disputes remain as to material facts." *Id.* (quoting *Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)*).  "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting, 929 F.2d at 248* (quoting *Mingus Constructors, 812 F.2d at 1391*).

### III.  Analysis

The parties' competing declaratory actions turn on a single issue: whether the purchase option clause contained in the lease is enforceable, and specifically, whether the purchase option price is an unconscionable term.  Defendants argue that:

> [t]he purchase price contained in the lease is unconscionable under Ohio law because it was established fifty years ago and in no way reflects the current fair market value of the property.  Because the purchase option is unenforceable, Defendants are entitled to judgment as a matter of law as to all claims against them.

ECF No. 12 at PageID #: 179.  Plaintiff agrees that unconscionability is the only issue to be resolved as to the declaratory actions and observes, "Defendants do not allege that the USPS committed any breach of contract or that the USPS somehow failed to properly exercise their option to purchase.  Instead, they simply argue that the agreed-upon option price, $300,000, negotiated by their predecessor-in-interest, is unconscionable." ECF No. 11-1 at PageID #: 94.

As a preliminary matter, the parties dispute whether federal or state law should govern the action.  The Supreme Court has consistently held that "obligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs. Corp., 487 U.S. 500, 504 (1988)*; *see also* *United States v. Little Lake Misere Land Co., 412 U.S.*

5

(1:14cv2579)

580, 592–94 (1973); *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411 (1947); *Nat'l Metro. Bank v. United States*, 323 U.S. 454, 456 (1945).  Moreover, another unit of the instant court has recognized that federal common law governed in a contract dispute between the United States Postal Service and a tenant.  *U.S. Postal Serv. v. Spodek*, No. 3:11-CV-1878, 2012 WL 2711483, at *4 (N.D. Ohio June 20, 2012), *report and recommendation adopted*, No. 3:11 CV 1878, 2012 WL 2711482 (N.D. Ohio July 9, 2012) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988)).

Notwithstanding the express language of *Boyle*, Defendants argue that a Seventh Circuit decision, *Powers v. U.S. Postal Serv.*, 671 F.2d 1041 (7th Cir. 1982), "created a tide of case law running strongly against the proposition that there exists federal common law for real property." ECF No. 12 at PageID #: 184.  Each case within the "tide of case law" Defendants cite, however, preceded *Powers*.  ECF No. 12 at PageID #: 184 (collecting cases that were decided before *Powers*).  Moreover, as Plaintiff observes, there is a circuit split between *Powers* and *Forman v. United States*, 767 F.2d, 875, 879–80 (Fed. Cir. 1985), as *Forman* applied federal rather than state law to a post office lease, and the Sixth Circuit has yet to resolve the split.  The Second Circuit has noted the split between *Powers* and *Forman* without resolving it, as the outcome was the same under federal and state law in the case before the court.  *Kerin v. U.S. Postal Serv.*, 116 F.3d 988, 990–91 (2d Cir. 1997); *see also S.S. Silberblatt, Inc. v. U.S. Postal Serv.*, 210 F.3d 385 (9th Cir. 2000) (table) (declining to resolve split between *Powers* and *Forman* "since the same result is reached in this case whether federal or state law is applied").  In this case, the outcome is identical whether federal or state law is applied.  Accordingly, the Court will analyze the

6

(1:14cv2579)

purchase option clause under Ohio law, as urged by Defendants.

Under Ohio law, "[u]nconscionability is determined by reference to the relative benefit of the bargain to the parties *at the time of its making*, the nature of the methods employed in negotiating it, and the relative bargaining power of the parties." *Miller v. Household Realty Corp.*, No. 81968, 2003 WL 21469782, at *7 (Ohio Ct. App. June 26, 2003) (emphasis added). To demonstrate that a contractual term is unconscionable, a party bears the burden of proving that the term is both procedurally and substantively unconscionable. *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 20 (Ohio 2008). "[C]ourts generally are reluctant to apply the doctrine of unconscionability to transactions entered into between business entities dealing at arm's length." *Cincinnati Ins. Co. v. Thompson & Ward Leasing Co.*, 815 N.E.2d 1126, 1131 (Ohio Ct. App. 2004). A determination of whether a contract term is unconscionable is an issue of law. *Taylor Bldg. Corp. of Am.*, 884 N.E.2d at 20.

Procedural unconscionability relates to the manner in which the parties formed the contract. It exists when one of the parties either lacks equal bargaining power or is otherwise unfairly or unjustly drawn into a contract. *Id.* at 22. "In determining whether an agreement is procedurally unconscionable, courts consider the relative bargaining positions of the parties including each party's age, education, intelligence, experience, and who drafted the contract." *Arnold v. Burger King*, 48 N.E.3d 69, 85 (Ohio Ct. App. 2015). Other factors guiding the analysis include:

> belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to

7

(1:14cv2579)

> protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.

*Taylor Bldg. Corp. of Am.*, 884 N.E.2d at 22 (quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d).

"Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable." *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993). "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Hayes v. Oakridge Home*, 908 N.E.2d 408, 414 (Ohio 2009).

The purchase option is neither procedurally nor substantively unconscionable. Defendants do not attempt to argue that the purchase option is procedurally unconscionable. To the contrary, the bargaining process between Plaintiff and American Guardian Financial (the original party to the lease) was fair. The purchase option is written in the same font as the rest of the lease, rather than in fine print. In fact, the purchase option is set aside on its own page of the lease. ECF No. 11-2 at PageID #: 112. The trustees of the original party, Ned K. Barthelmas and William E. Deegan, were both experienced with real estate. ECF No. 11-5. There is no reason to believe that Barthelmas or Deegan were unable to protect their interests when entering into the lease agreement. The undisputed record reveals that the deal was a bargained for exchange conducted at arm's length, making the doctrine of unconscionability inappropriate in this case.

8

(1:14cv2579)

See *Cincinnati Ins. Co.*, 815 N.E.2d at 1131.

       Although a finding of no procedural unconscionability is sufficient to defeat Defendants'

claim that the purchase option is unenforceable, the record suggests that Defendants' argument

also fails because the purchase option was not substantively unconscionable.  Defendants

purchased the lease and the property in 1977 for $191,932.88: $93,000 to purchase the lease and

the deed, and $98,932.88 in assumed outstanding mortgage debt.  ECF No. 11-10 at PageID #:

153.  Defendants were represented by counsel during the purchase.  ECF No. 11-6 at PageID #:

139, p.16:25-17:8.  While so represented, Defendants "assume[d] and agree[d] to perform and

observe all obligations and covenants to be performed . . . pursuant to the Lease."  ECF No. 11-8

at PageID #: 149.  Defendants received annual rent payments exceeding $25,000 per year for the

time between purchase in 1977 to the present.  ECF No. 11-1 at PageID #: 109.  Upon

completion of the sale, Defendants will make over $100,000 more on the sale than what they

paid to assume the lease and the property.  ECF No. 11-2 at PageID #: 112.  As a matter of law,

these are not substantively unfair terms.  *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d

356, 366 (6th Cir. 2014) (applying Ohio law to hold that, even though the appellant was

"dissatisfied with the terms of the lease" at the time of the lawsuit, the contract was not

substantively unreasonable because the agreed-upon term was "a good deal at the time" that it

was made).

       The purchase option is neither procedurally nor substantively unconscionable.  The

purchase option, therefore, is enforceable as written.  This does not end the analysis, however,

because Plaintiff seeks specific performance based on the terms of the purchase option contained

(1:14cv2579)

in the lease.  *See In re Landmark Holding Co.*, 286 B.R. 377, 382 (Bankr. D. Minn. 2002)

("Specific performance is an equitable remedy but in order for a court to decide whether that

remedy is appropriate, the first issue that must be addressed is whether the underlying contract is

enforceable.").

      The United States is entitled to specific performance where it has a contract to purchase

land.  *Bastian v. United States*, 118 F.2d 777, 780 (6th Cir. 1941).  "Ohio law recognizes that

'specific performance may be had as a matter of right, because there is nothing else in the world

exactly equivalent to conveyance of the particular piece of real estate contracted for.'"  *Spodek*,

2012 WL 2711483, at *4 (quoting *Orion Care Servs., LLC v. 138 Michael, Limited*, 2010 WL

1980979, *4 (S.D. Ohio 2010)).  "A party seeking specific performance, however, must show

performance on his own part pursuant to the terms of the contract."  *White v. Nemastil*, 503

N.E.2d 189, 194 (Ohio Ct. App. 1985) (citing *George Wiedemann Brewing Co. v. Maxwell*, 84

N.E. 595 (Ohio 1908)).

      In this case, Plaintiff has satisfied the lone condition precedent to purchasing the

property—it timely and properly exercised all six renewal options, and provided Defendants

notice of the decision to exercise the purchase option over a year before the expiration of the

lease.  ECF No. 11-4 ¶ 9; ECF No. 11-13.  Plaintiff remains ready, willing, and able to perform

under the contract.  ECF No. 11-16.  Moreover, as explained above, there is no impediment to

enforcement of the contract.   Defendants do not argue that Plaintiff has acted in bad faith.

Accordingly, specific performance is appropriate.

      Defendants argue that an Ohio Supreme Court decision, *Quarto Mining Co. v. Litman*,

10

(1:14cv2579)

326 N.E. 2d 676 (Ohio 1975), compels a grant of summary judgment in Defendants' favor on

Plaintiff's claim for specific performance.  In *Quarto*, the Supreme Court of Ohio declined to

enforce an option to purchase surface rights of a residential property held by the company that

owned the property's mineral rights.  *Id.* at 686.  *Quarto* is distinguishable.  As the Ohio

Supreme Court mentioned, a "full consideration of the circumstances of each particular case"

governs the equitable analysis of a specific performance claim.  *Id.*  *Quarto* did not mention any

other economic benefit conferred by the mineral rights holder to the surface rights holder over the

life of the lease.  By contrast, Defendants accepted annual rental payments over the duration on

the lease in this case.  Moreover, *Quarto* does not address the profit, if any, the surface rights

holders would have made upon performance of the conveyance.  In this case, however,

Defendants will make over $100,000 in profit on top of the rental payments received.  ECF No.

11-2 at PageID #: 112.  Finally, *Quarto* involved a lease between a coal company and a

residential property owner, suggesting an inequity of bargaining power.  In this case, as discussed

above, the bargained-for exchange between Plaintiff and American Guardian Financial (the

original party to the contract) was an arm's length transaction for commercial property, and

Defendants agreed to assignment of the lease and the property from American Guardian

Financial while represented by counsel.  In sum, *Quarto* is distinguishable from the instant case,

and poses no obstacle to granting specific performance.

      The only remaining claims are Defendants' claims for holdover rents or, in the

alternative, an unconstitutional taking.  Both fail as a matter of law.  "[O]nce a lessee exercises

an option to purchase . . . , the former lessee cannot be held liable for holdover rents.  *Cent.*

11

(1:14cv2579)

*Funding, Inc. v. CompuServe Interactive Servs., Inc.*, 2003-Ohio-5037, ¶ 56.  Similarly, a taking

does not occur when the United States occupies property pursuant to a valid contract.  *DeMarco*

*Durzo Dev. Co. v. United States*, 69 Fed. Cl. 262, 276 (Fed. Cl. 2005) ("As a matter of law,

however, a taking cannot occur when the Government occupies property, pursuant to a valid

lease."); *Alde, S.A. v. United States*, 28 Fed. Cl. 26, 33 (1993) ("A taking occurs when the

rightful property, contract, or regulatory powers of the Government are employed to control

rights or property which have not been purchased.").  As mentioned above, the purchase option

unambiguously permitted Plaintiff to exercise the option, provided it gave Defendants a year of

notice of intent to do so.  ECF No. 11-2 at PageID #: 112.  Plaintiff gave Defendants the requisite

notice.  ECF No. 11-13.  Accordingly, Defendants' claims for holdover rent and unconstitutional

taking fail as a matter of law.

## Conclusion

For the forgoing reasons, the Court grants Plaintiff's motion (ECF No. 11), denies

Defendants' motion (ECF No. 12), and enters judgment in favor of Plaintiff on all claims and

counterclaims.


IT IS SO ORDERED.


 August 31, 2016                          /s/ Benita Y. Pearson
Date                                     Benita Y. Pearson
                                         United States District Judge

12